666 F.2d 505
 2 Ed. Law Rep. 7
 TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation,
Plaintiff-Appellant,
v.
The SCHOOL BOARD OF DADE COUNTY, FLORIDA, a public
corporation under the laws of the State of
Florida, Defendant-Appellee.
 No. 81-5079.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 22, 1982.
 
 Welbaum, Zook, Jones & Williams, Dan B. Guernsey, Miami, Fla., for plaintiff-appellant.
 Frank A. Howard, Jr., Thomas G. Spicer, Attys., School Bd. of Dade Co., Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TUTTLE, HILL and JOHNSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from a summary judgment in which the trial court concluded that it lacked jurisdiction to entertain a diversity action because "under the singular facts of this case the Eleventh Amendment to the Constitution of the United States bars this Court from exercising subject matter jurisdiction of this case."
 
 
 2
 The facts necessary to an understanding of this appeal are not in serious dispute. The county school board contracted for the building of a new school in Dade County. Under provisions of the Florida State Constitution and statutes the county board made its request to the state board for an allocation of funds to be raised by a bond issue for the purpose of building this school. Such an allocation was appropriately made. During the period of construction the general contractor defaulted and Travelers, which had executed a payment and performance bond for the general contractor, undertook to finish the construction work by the use of another contractor. This contractor was duly paid off for the contract price and seven extras after some delays in construction. Upon completion Travelers made a claim against the county board in the sum of $139,000, asserting that the board's architects had unduly delayed the completion of the contract while they undertook to make necessary changes. The board refused to pay and Travelers filed suit in the United States District Court on diversity grounds. Thereupon the county board filed its defensive pleadings and moved for a summary judgment on the ground that it was an arm of the state of Florida and the trial court lacked jurisdiction because of the protection of the Eleventh Amendment to the Constitution of the United States.
 
 
 3
 The board does not contend that it cannot, under any circumstances, be sued. Its claim for an Eleventh Amendment protection here is based upon the fact that the particular activity giving rise to the claim by the insurance company is one as to which the state of Florida made the Board of Education its agent in contracting for, supervising the construction of, and the payment for, this particular school building. As is demonstrated by the record in the trial court at the time of the granting of the motion for summary judgment, the county board and the state board were proceeding on the assumption that the proceeds from the state bond issue in an amount sufficient to complete this contract would be available for that purpose and that in response to any judgment against the county board it would use these state funds to discharge the indebtedness. These circumstances, it is claimed, created in the county board of education a status comparable to that of the protected state official in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 4
 The appellant, on the other hand, contends that the test laid down by Edelman is whether such a judgment must inevitably be satisfied from state funds. It contends that nothing in the record establishes the fact that the judgment entered in this lawsuit could be satisfied only out of the state funds which were made available to the defendant board for that purpose.
 
 
 5
 We are satisfied that the record discloses that the county board had substantial other funds which were available for construction purposes without reference to the particular allotment of the state Capital Outlay Bond issue proceeds. Affidavits of the Dade board officials established this fact. Moreover, the county board counsel in his argument to the trial court made a binding concession to this effect. He said: "Now, being very candid, Judge, I am not trying to come here and say that this (Dade County) School Board's seven hundred million dollar budget couldn't find the $139,000, that is not what I am saying. I am saying that it is not our responsibility, that is not what the state program contemplates. This is a cost of construction. The question is who pays that cost." Thus, it is clear that the issue before us presents the following question: If a subordinate political entity of a state which is not normally considered a part of the state for Eleventh Amendment purposes has property and means of its own with which it can respond to a judgment, does it, nevertheless, have Eleventh Amendment protection if, in fact, the suit against it arises out of a contract for the completion of which the state has furnished funds?
 
 
 6
 We begin with the basic proposition that ordinarily boards of education in Florida are not qua boards of education protected from suit by the Eleventh Amendment. In Campbell v. Gadsden County District School Board, 534 F.2d 650 (5th Cir. 1976), a case involving a Florida county school board,[1] the Court of Appeals for the Fifth Circuit said:
 
 
 7
 Appellants further contend that Campbell's claims for back pay and attorney's fees are barred by the Eleventh Amendment in accordance with Edelman v. Jordan (cites omitted). The District Court apparently accepted this argument, at least with respect to the back pay issue, since its denial of back pay was predicated on Edelman concerns. As the Supreme Court in Edelman was careful to note however, a County does not occupy the same position as the State for the purposes of the Eleventh Amendment.... (W)hile County action is generally State action for the purposes of the Fourteenth Amendment, a County defendant is not necessarily a State Defendant for the purposes of the Eleventh Amendment. 415 U.S. at 667 n. 12, 94 S.Ct. at 1358 n. 12. Our post-Edelman cases involving actions for retrospective monetary relief against County School Boards and similar entities have held that the Eleventh Amendment does not bar it from such award so long as the entities sued are locally controlled, essentially local in character, and funds to defray the awards would not be derived primarily from the State Treasury. (Cites omitted.) Our analysis of the nature of Florida School Boards in the context of determining their similarity to municipalities is sufficient to convince us that they are not the type of entities which are sheltered by the Eleventh Amendment.
 
 
 8
 534 F.2d 650 at 655-656.
 
 
 9
 What the Court said in the Gadsden County case was consistent with the Supreme Court's opinion in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where the Court said:
 
 
 10
 ... Petitioner is but one of many local school boards within the state of Ohio. It is subject to some guidance from the state board of education, Ohio Rev. Code Ann. § 3301.07 (p. 1972 & supp. 1975), and receives a significant amount of money from the state. Ohio Rev.Code Ann. § 3317 (p. 1972 & supp. 1975). But local school boards have extensive powers to issue bonds, Ohio Rev.Code Ann. § 133.27 (p. 1069), and to levy taxes within certain restrictions of state law. Ohio Rev. Code Ann. §§ 5705.02, 5705.03, 5705.192, 5705.194 (p. 1973 & supp. 1975). On balance the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the state. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.
 
 
 11
 429 U.S. at 280, 97 S.Ct. at 572-73. Thus, it is clear that there is nothing that inheres in the nature of a county school board in Florida that would entitle it per se to Eleventh Amendment protection.
 
 
 12
 We now turn to the question whether in the special circumstances existing with respect to this particular contract the character of the county school board is metamorphosed in such a manner as to be an arm of the state. Appellees assert that this occurs because the particular funds provided for the construction contract here involved were provided by the state of Florida. They would be looked to, in the opinion expressed by the affiant for the board, for the satisfaction of a judgment against it.
 
 
 13
 We think Edelman requires that we give a negative answer to this inquiry. In that case the suit was filed by persons entitled to certain benefits which were administered by the Illinois Department of Public Aid. It was their complaint that Illinois officials, operating under state regulations, were improperly authorizing grants to commence only with the month in which an application was approved and not including prior eligibility months for which an applicant was entitled to aid under federal law. The complaint sought an injunction, together with a judgment for benefits alleged to be past due. The district court and the Court of Appeals for the Seventh Circuit determined that the state officials were not protected by the Eleventh Amendment in such a suit. The Court, commenting on Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), noted that the relief awarded in Ex Parte Young was prospective only. The opinion then stated:
 
 
 14
 But the retroactive portion of the District Court's order here, which requires the payment of a very substantial amount of money which that court held should have been paid, but was not, stands on quite a different footing. These funds will obviously not be paid out of the pocket of petitioner Edelman. Addressing himself to a similar situation in Rothstein v. Wyman, 467 F.2d 226 (CA2 1972), cert. denied, 411 U.S. 921 (93 S.Ct. 1552, 36 L.Ed.2d 315) (1973), Judge McGowan observed for the court:
 
 
 15
 It is not pretended that these payments are to come from the personal resources of these appellants. Appellees expressly contemplate that they will, rather, involve substantial expenditures from the public funds of the state....
 
 
 16
 It is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force. 467 F.2d at 236-237 (footnotes omitted).
 
 
 17
 We agree with Judge McGowan's observations. The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself. Ford Motor Co. v. Department of Treasury, supra, (323 U.S. 549, 65 S.Ct. 347, 89 L.Ed. 389) than it does the prospective injunctive relief awarded in Ex Parte Young.
 
 
 18
 415 U.S. at 664, 94 S.Ct. at 1356 (emphasis added.)After noting that the injunction issued in Ex Parte Young and in the subsequent cases of Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969), were "not totally without effect on the state's revenues," the Court said:
 
 
 19
 ... while the Court of Appeals described this retroactive award of monetary relief as a form of "equitable restitution," it is in practical effect indistinguishable in many aspects from an award of damage against a state. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.
 
 
 20
 415 U.S. at 668, 94 S.Ct. at 1358 (emphasis added.)
 
 
 21
 The first, and probably less significant, distinction here from Edelman is that the complaint does not allege the breach of a legal duty on the part of any state official. It charges breach of a legal duty by the Dade County Board of Education, which, as we have seen, is not comprised of state officials.
 
 
 22
 The more significant distinction is that Edelman makes it clear that the Eleventh Amendment protection is available only if satisfaction of the judgment sought against the state "agency" must under all circumstances, be paid out of state funds. As we have already indicated, there is no contention, and no facts to support such a contention, if made, that there is any prohibition by state law or constitution that would prevent the county board of education from satisfying a judgment in this lawsuit out of county funds not in any way derived from the state of Florida. We, therefore, conclude that the appellee Board of Education of Dade County was not protected by the Eleventh Amendment.
 
 
 23
 We do not reach the question whether state law which confers upon the county boards of education the right to "sue and be sued" would amount to a waiver of the Eleventh Amendment protection against suits in the United States courts.
 
 
 24
 The judgment is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 This Court looks to the decisions of the Court of Appeals for the Fifth Circuit as binding precedent unless and until overruled or modified by this Court en banc. Bonner v. City of Pritchard, Alabama, et al., 661 F.2d 1206 (5th Cir. 1981)