**Thomas L. BAXTER, Plaintiff,**

v.

**FULTON–DeKALB HOSPITAL AUTHORITY, et al., Defendants.**

**Civ. A. No. 1:89–CV–0239–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 1991.

Debra E. Schwartz, Marcia Weil Borowski, Stanford, Fagan & Giolito, Atlanta, Ga., for plaintiff.

W. Ray Persons, Arrington & Hollowell, Forrest W. Hunter, Bernard Taylor, Alston & Bird, Atlanta, Ga., for defendants.

ORDER

FORRESTER, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment, defendants Fulton–DeKalb Hospital Authority and J.W. Pinkston, Jr.'s motion for summary judgment, defendant Dr. Corey M. Slovis' motion for summary judgment, and defendant Slovis' motion for leave to file an amended answer. Plaintiff brings this action under 42 U.S.C. § 1983, alleging that defendants denied him procedural and substantive due process by terminating his employment as an emergency medical technician at Grady Memorial Hospital. The summary judgment motions only concern Count One of the Complaint, which asserts procedural due process claims, and Count Two, which asserts substantive due process claims. Plaintiff has also asserted pendent state claims against defendant Corey M. Slovis for "oral defamation" and tortious interference with contractual relations.

## I. FACTS

Defendant Pinkston is the Secretary/Treasurer of the Fulton–DeKalb Hospital Authority and the Executive Director of Grady Memorial Hospital. At the time of the alleged acts which are the subject of this suit, defendant Slovis was Director of the Medical Emergency Clinic of Grady Hospital and Medical Director of Grady's Emergency Medical Services.[1] Defendant Fulton–DeKalb Hospital Authority, d/b/a Grady Memorial Hospital (Grady), hired plaintiff as an emergency medical technician on September 12, 1984. Plaintiff became a permanent part-time paramedic in the ambulance department of Grady on September 8, 1987.

At the time of the incident the Authority had a very precise and detailed grievance procedure. Plaintiff has presented the hospital manual of personnel policies and practices as evidence of the existence of a mutually explicit agreement or reasonable expectation that he would continue in his appointment absent good cause for his dismissal.

The "standards of conduct" chapter of the manual states:

It is absolutely essential that we have a clearly defined set of standards of conduct which can be understood by both supervisors and employees. This gives everyone security against favoritism and discriminatory treatment. If each of us knows the standards of conduct required, there is more likelihood of uniformity of action.

p. 45. The manual provides three levels of disciplinary action—verbal warnings, written reprimands or disciplinary suspensions, and discharge. The different levels of discipline are provided "to give each employee a chance to improve." Under the discharge procedure, supervisors,

are expected to consult with their department head before discharging any employee. The employee may be suspended pending an investigation. When an employee is suspended pending investigation, he will be told the reason for the suspension, given an opportunity to state fully [his] position, and told that [he] will be contacted as soon as the investigation is completed.

On page 46 the manual expressly promises:

If the investigation reveals that you are not guilty of *any* dischargeable offense, you will be returned immediately to your job with pay for the time missed during the suspension. [Emphasis in original].

The manual lists offenses which violate "acceptable standards of conduct for employees of the Fulton–DeKalb Hospital Authority." p. 47. These standards "are not intended to restrict the rights of individuals, but to protect and maintain the rights of all." The violations listed are "examples of undesirable or intolerable behavior but as such are not all inclusive since [employees] are expected to comply with the rules of common sense and decency."

1. Slovis' official title was apparently "Medical Director" of the Grady Emergency Medical Service. The director of a licensed ambulance service is referred to as a "Medical Advisor" under O.C.G.A. § 31–11–50(b). As the medical director of the Grady EMS, Slovis served as the medical advisor for the ambulance service.

An "Employee Grievance Procedure" begins on page 51 of the manual. p. 51. The procedure is available for employees who wish to process their complaints in a formal manner. It is not available to probationary, temporary, on-call or pool employees and is the exclusive means for processing formal employee grievances. Step I of the procedure consists of submitting a written complaint to the employee's supervisor. Step II is an appeal to the department representative of decisions made by the employee's supervisor. Step III involves submission of the grievance complaint to a representative of the executive director of the hospital. An employee dissatisfied with the executive director's decision may request a hearing before a "Step IV Committee" by filing the written grievance complaint with the director of employee relations. The Step IV Committee will hold a trial-type hearing at which the grievant and the hospital are both allowed to present three witnesses and to cross-examine the other party's witnesses. After the hearing the committee issues a decision on the complaint, which is forwarded to the hospital's executive director, "who shall either approve, reject or modify the decision." The executive director's decision "shall be final."

The events which gave rise to the adverse employment action against the plaintiff occurred on August 10, 1988. Plaintiff Baxter and his partner, Latricia Jones, responded to an emergency call. Baxter completed a report on the incident that he and his partner Jones both signed. Jones later informed her supervisors that the report was inaccurate and failed to state that Baxter had initiated cardiopulmonary resuscitation on a patient at the scene and had then abandoned the effort without prior authorization from a physician.

After an investigation, plaintiff's supervisors concluded that Baxter had both initiated and discontinued life support procedures without authorization of a physician. Baxter contends that the investigation was conducted by the Medical Emergency Department (Clinic) under the direction of defendant Slovis. Slovis maintains that his involvement in the investigation was in his capacity as Medical Advisor to Grady's EMS and that the Medical Emergency Clinic had no involvement in the investigation. The record contains an intra-office communication from Theresa Little, Director of Training, to defendant Slovis as Medical Director of the Emergency Medical Services. Little requests that Slovis conduct an investigation of the incident from the "aspect of medical director as well as our legal liability standpoint." The communication is dated August 22, 1988.

Baxter was suspended from August 30, 1988 until September 2, 1988, when the investigation was completed. On September 2, plaintiff was notified that he was being discharged from his employment with the hospital authority for violating two standards of conduct set forth in the Personnel Policies and Practices Handbook of Grady Memorial Hospital. Plaintiff was charged with violating standard number one, which prohibits "falsifying any hospital record or giving false information for hospital records" and standard number five, which prohibits "sleeping on the job, neglecting your work, flagrantly loafing, or being either verbally or physically abusive towards patients or visitors."

Plaintiff appealed the decision to terminate him by filing a complaint under the employee grievance procedure set forth in the hospital personnel manual. He was given a hearing on October 6, 1988 before a "Step IV Committee." At the hearing both plaintiff and the hospital presented evidence, offered testimony and cross-examined witnesses. Defendant Slovis was not called as a witness. However, Mr. Rayford Hawkins, (non-medical) Director of Emergency Medical Services for the hospital, testified at the hearing that he had sought a medical opinion as to what had occurred from Dr. Slovis. Frank Bader, Operations Supervisor for the Ambulance Department, also testified for the hospital. He reported the results of his investigation which included interviews with all persons involved with the incident and a review of all documents, including the police report and trip report. Plaintiff's partner, Jones, was the hospital's third witness.

The committee found Jones's testimony lacking in credibility and decided that plaintiff's version of the event was more plausible. The committee determined that the hospital had failed to sustain its burden of proof that plaintiff had violated the hospital's standards of conduct. The committee concluded that plaintiff should be reinstated without loss of pay or benefits.

The personnel manual provides that the decision by the executive director to approve, reject or modify the committee's decision shall be final. Defendant Pinkston concurred with the committee's opinion and directed that it be implemented. After approving the decision on October 20, 1988, Pinkston contacted Baxter and told him to report for work on October 31.

Defendant Slovis sent a memo to Ray Hawkins, Director of Grady Emergency Medical Services, on October 26, 1988, notifying him that he would no longer function as the plaintiff's "medical control physician" and that Baxter could "no longer function under my medical license as a paramedic at Grady Memorial Hospital." When Baxter reported for work on October 31, he was told by Hawkins that he could not return to his job. Hawkins gave him a copy of Slovis' memo.

On November 1, plaintiff met with defendant Slovis in Hawkins' office at the hospital. Slovis informed Baxter that he was withdrawing his sponsorship because of the incident of August 10, 1988 and insisted that Baxter admit his mistake and undergo retraining before Slovis would sponsor him. Baxter insisted that he had been cleared of any wrongdoing by the Step IV Committee. Slovis refused to let Baxter come back to work under Slovis' license.[2]

Defendant Pinkston wrote Baxter on November 7, 1988 to inform him that the hospital authority had contacted the Department of Human Resources and was awaiting a response "regarding how we should handle an EMT who is not covered by a physician's license." Pinkston also informed Baxter that his case had been submitted to the Composite Board of Medical Examiners, the state agency charged with issuance and supervision of licenses for emergency medical technicians. Pinkston stated that he could not allow Baxter to continue his work with the hospital until he received reports from the Department of Human Resources and the State Composite Board.

The Director of the Emergency Health Section of the Department of Human Resources responded to the Hospital Authority's inquiry on November 14, 1988. The letter addressed to Ray Hawkins concluded that Georgia law "allows only one medical advisor per ambulance service and that correspondingly an EMT cannot select another physician to provide these services." Hawkins wrote Baxter on November 28, enclosing a copy of the letter from the Department of Human Resources. Hawkins stated that Baxter's ability to work as an EMT was dependent upon the sponsorship of a physician, and since that sponsorship had been withdrawn, Baxter could not continue to work as an EMT. Hawkins suggested that Baxter pursue transfer opportunities with the personnel department at the hospital. Baxter did request transfer to alternative part-time employment outside of the ambulance department. Defendants have produced evidence that Baxter was offered two alternative positions through his counsel but declined to accept employment. Baxter has not been offered re-employment as an EMT in the ambulance department. Defendant Slovis resigned as Medical Director of Emergency Medical Services on June 1, 1989. The new medical director has not offered to sponsor plaintiff's employment as an EMT in the ambulance department. The State Composite Board has concluded its investigation of the incident involving the plaintiff and concluded that no violations occurred and no discipline of plaintiff was warranted.

## II. LEGAL ANALYSIS

Because so few facts are in dispute, this case is particularly suited for disposition on

---

2. Plaintiff's defamation claim is based on statements Slovis allegedly made at the close of the meeting and immediately afterwards in the hallway. Those allegations are not the subject of the summary judgment motions before the court.

summary judgment.[3] Plaintiff has moved for summary judgment against all defendants on his substantive and procedural due process claims. All defendants have moved for summary judgment on grounds that plaintiff suffered no deprivation of a constitutionally protected interest. The Hospital Authority and defendant Pinkston have moved for summary judgment on grounds of qualified immunity for Pinkston in his individual capacity. Defendant Slovis contends he was not a state actor and alternatively asserts immunity under the eleventh amendment. Slovis also seeks to amend his answer to incorporate the defenses of sovereign immunity and qualified immunity.

### A. *Under Color of State Law*

Dr. Slovis contends that he did not act under "color of state law." The complaint names Slovis as a defendant individually and in his official capacity as "Medical Director of Grady Emergency Medical Services." In this position Slovis serves as the medical advisor to the Grady EMS pursuant to O.C.G.A. § 31–11–50. His duties as medical advisor are subject to state law and the approval of the medical consultant of the Emergency Health Section of the Division of Physical Health of the Department of Human Resources of the State of Georgia. Slovis Depo., pp. 33–34. Under O.C.G.A. § 31–11–50(b), a medical advisor is charged with providing medical direction and training for ambulance personnel in conformance with acceptable emergency medical practices and procedures. Slovis held his position as Medical Advisor/Director to the Grady EMS ambulance service pursuant to a contract with the State Department of Human Resources. Slovis Aff., ¶ 5. Slovis was also the Medical Di-

rector of the Medical Emergency Clinic at Grady Hospital.

Slovis makes much of the fact that his duties as Medical Advisor/Director for the Grady EMS were separate and distinct from his responsibilities as *Medical Director of the Medical Emergency Clinic*. He argues that his participation in the hospital investigation of the August 10 incident was solely in his capacity as Medical Advisor to the EMS. Slovis Aff., ¶¶ 5, 7. He denies that any investigation was conducted by the Medical Emergency Clinic or him in his capacity as medical director of the clinic. Slovis Aff., ¶ 6. Slovis apparently emphasizes a distinction between his two positions to support an argument that although, as director of the medical emergency clinic, he might be involved in personnel matters and expected to exercise control and discipline over the clinic's staff, as medical advisor he had no similar responsibilities and was not required to be familiar with personnel policy and procedures. Slovis seeks to avoid responsibility for the failure to reinstate plaintiff because he had no power, in his capacity as the Medical Advisor to the EMS, to terminate or reinstate Baxter.

■ To state a fourteenth amendment cause of action under § 1983, plaintiff must allege state action under the fourteenth amendment and action under "color of state law" under § 1983. *Burch v. Apalachee Community Mental Health Services*, 840 F.2d 797, 802–03 (11th Cir.1988). A person acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,*

---

**3.** Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988). Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552, the non-moving party is

then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Allegations of the complaint are not sufficient to meet this burden. To survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552; *Brown*, 848 F.2d at 1537.

313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). When a defendant's conduct qualifies as "state action" under the fourteenth amendment, then the defendant has also acted under color of state law as required by § 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). A deprivation of federal rights constitutes state action under the fourteenth amendment when it is "caused by the exercise of some right or privilege created by the state ... or by a person for whom the state is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937, 102 S.Ct. at 2753; *West v. Atkins*, 487 U.S. at 49, 108 S.Ct. at 2255.

■ A defendant who abuses the authority given him by the state also acts under color of state law. *Id.*, at 49, 108 S.Ct. at 2255; *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Public employees acting in their official capacity or exercising responsibility pursuant to state law are acting under color of state law. *West*, 489 U.S. at 50, 108 S.Ct. at 2256. However, a defendant's abstract status is not controlling—the proper inquiry is whether the defendant's conduct is "fairly attributable" to the state. *Parratt v. Taylor*, 451 U.S. 527, 535–36, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). A person may qualify as a state actor because he receives overt assistance from state officials, *Tulsa Professional Collections Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), acts in concert with other state actors, *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 n. 6, 102 S.Ct. 2764, 2770 n. 6, 73 L.Ed.2d 418 (1982), where his authority was delegated to him by the state, *National Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988), or where the state creates the legal framework governing the conduct. *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

■ Thus, a private physician on the staff of a county hospital who directs hospital staff and uses hospital facilities is a state actor. *Morrison v. Washington County, Alabama*, 700 F.2d 678, 683 (11th Cir.1983). A private physician who contracts with the state to provide medical care for inmates acts under color of state law. *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir.1986). Medical personnel working at government facilities need not be state employees for their conduct to constitute state action. *Id.* And, when private persons contract to perform "a function which is traditionally the exclusive prerogative of the state," such as providing for the health and welfare of the citizenry, they act under color of state law. *Carswell v. Bay County*, 854 F.2d 454 (11th Cir.1988); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir.1985); *Morrison v. Washington County, Alabama*, 700 F.2d at 683.

The court is unmoved by Slovis' effort to dichotomize accountability for his conduct. Slovis' argument that his right hand should not be accountable for what his left hand was doing is particularly discomforting coming from a physician. What Slovis could not do as Medical Director of the Medical Emergency Clinic—because the hospital had cleared plaintiff of the charges against him—Slovis accomplished through his position as medical advisor.

For purposes of the motions before the court, the distinction between Dr. Slovis' positions with the hospital are immaterial. In both positions Slovis was exercising rights and privileges created by the state. His actions were possible only because he was clothed with the authority of state law and was performing functions which are traditionally the exclusive prerogative of the state. *See Carswell v. Bay County*, 854 F.2d 454 (1988); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir.1985); *Morrison v. Washington County, Alabama*, 700 F.2d at 683. A physician exercising purely medical judgment may also be liable as a state actor under § 1983. *Ort v. Pinchback*, 786 F.2d at 1105 (private physician contracting with prison can be

liable for cruel and unusual punishment under § 1983 for rendering inadequate medical treatment of prisoner). As a matter of law, Slovis was a state actor, acting under color of state law, and his conduct may be fairly attributed to the state.

■ Pinkston also contends he is not a state actor. Defendant Fulton–DeKalb Hospital Authority, doing business as Grady Memorial Hospital, is a public hospital operated pursuant to the Georgia Hospital Authorities Law. O.C.G.A. § 31–7–70, *et seq.* While local hospital authorities are instrumentalities of their respective counties and not the state, *Fulton–DeKalb Hospital Authority v. Gaither*, 241 Ga. 572, 247 S.E.2d 89 (1978), they are still state actors. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendant Pinkston, as Secretary and Treasurer of the Fulton–DeKalb Hospital Authority and Executive Director of Grady Memorial Hospital, is clearly a state actor.

B. *Unconstitutional Deprivation*

■ The Fourteenth Amendment of the United States Constitution prohibits deprivations of life, liberty or property without due process of law. Section 1983 provides a private cause of action for unconstitutional deprivations occurring under color of state law. *Faucher v. Rodziewicz*, 891 F.2d 864, 868 (11th Cir.1990). To state a cause of action under § 1983 and the fourteenth amendment, a plaintiff must allege that the defendant, acting under color of state law, has deprived plaintiff of a constitutionally protected interest in life, liberty or property. *Wofford v. Glynn Brunswick Memorial Hospital*, 864 F.2d 117, 118 (11th Cir.1989).

In Georgia a public employee *who can only be dismissed for cause* has a legitimate claim to a property interest in continued employment. *Nolin v. Douglas County*, 903 F.2d at 1553; *Wofford*, 864 F.2d at 119. To determine whether a public employee may only be dismissed for cause, the court looks to the applicable laws, regulations and personnel policies. *Nolin*, at 1553; *Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1576 (11th Cir.1983). In *Brown v. Georgia Dept. of Revenue*, 881 F.2d 1018 (1989), the Eleventh Circuit found that the personnel board rules established a cause requirement for dismissal because the rules stated that a permanent employee could *only* be dismissed for enumerated reasons and provided procedural protection before adverse action against an employee could be taken. *Id.*, at 1027. While the magic words "for cause" did not appear, a prior version of the regulations had defined "for cause" with the words used in the new version. The court held that the discretion of the state to dismiss an employee was sufficiently circumscribed to constitute a for cause requirement.

Under Georgia law, a private employee who is *admittedly* or *explicitly* an at-will employee cannot be transformed into a contract employee by regulations and personnel policies so as to support an action for wrongful discharge. *Garmon v. Health Group of Atlanta, Inc.*, 183 Ga.App. 587, 359 S.E.2d 450 (1987). The Eleventh Circuit has applied *Garmon* to public employees. *See Wofford*, 864 F.2d at 119. The provision of a grievance procedure alone will not establish that the employee can only be discharged for cause. *Adams v. Bainbridge–Decatur County Hospital Authority*, 888 F.2d 1356, 1365 (1989). Even the provision of a list of offenses which can lead to discipline may not create a property interest. In *Wofford v. Glynn Brunswick Memorial Hospital* the court held that hospital security officers who were discharged as part of the elimination of the entire force did not have a property interest in continued employment with the hospital. 864 F.2d at 118. Relying on *Garmon*, the court ruled that the hospital's employee handbook could not transform an admittedly at-will employee into an employee who can be dismissed only for cause. The handbook specified seven classifications of reasons for discharge but stated that the categories were used for purposes of rehire or references for future employment. 864 F.2d at 118. The manual promised only that the hospital would make a "sincere effort" to settle disputes in accordance

with the grievance procedures set forth therein. *Id.*

As noted above, the Eleventh Circuit has emphasized the presence of substantive restrictions on a government body's power to dismiss an employee in determining whether the employee has a legitimate expectation in continued employment. *Barnett,* at 1576; *Brown,* at 1027. In *Glenn v. Newman,* the personnel rules at issue set forth specific grounds for discipline of employees and established procedures for the imposition and appeal of actions to dismiss, suspend, or demote an employee. 614 F.2d 467, 469–70 (1980). The regulations established a for cause limitation on suspensions, but not for dismissals. *Id.,* at 472. Nonetheless, the court found that the specified reasons for dismissal listed were analogous to a for cause requirement and that the review procedure indicated a "mutual understanding" that the employee could only be discharged for cause. *Id.*

The court finds that the Personnel Policies and Procedures Manual, as a matter of law, provides "for cause" protection. The manual promises reinstatement and back pay if an employee is cleared of the charges against him. The requirements and procedures imposed upon the hospital regarding dismissals are analogous to requiring cause and sufficiently circumscribe the discretion of the hospital to dismiss an employee for misconduct. Unlike the provisions in *Wofford,* these are substantive restrictions that give rise to a mutual expectation of continued employment absent misconduct. Furthermore, plaintiff has not admitted that he is an "at will" employee.

## C. *Procedural Due Process*

▌ Plaintiff claims that his right to due process was violated when the hospital refused to implement Pinkston's decision to reinstate him after Slovis withdrew his "sponsorship" of plaintiff. Plaintiff was afforded constitutionally sufficient due process of law in regard to his dismissal for violation of two of the hospital's standards of conduct. However, the act which is at issue in this case is the *de facto* discharge for failure to have a sponsor which mani-

fested itself in the refusal to reinstate plaintiff after the procedures had run their course. It is clear that the issue of sponsorship was never raised during the grievance process and that the withdrawal of sponsorship was based on the very charges of which plaintiff was cleared through the grievance procedure. The court finds that the hospital's refusal to reinstate the plaintiff deprived him of procedural due process on the subsequent accusation that he lacked sponsorship. It follows that the refusal to reinstate plaintiff was a deprivation of plaintiff's constitutionally protected interest in continued employment without granting plaintiff *any* process of law.

The parties agree that O.C.G.A. § 5–4–1 is the proper avenue to appeal decisions made by a Step IV Grievance Committee and the executive director of the hospital. Defendants argue that plaintiff's claim is barred because he failed to take advantage of this existing state remedy for persons aggrieved by administrative decisions. Plaintiff argues that he was not aggrieved by the committee's decision, and that if Slovis was dissatisfied, Slovis should have appealed the decision himself.

The Eleventh Circuit has held that the availability of review of decisions by state agencies and authorities by writ of certiorari to a superior court under O.C.G.A. § 5–4–1 provides constitutionally adequate procedural protection. *Lee v. Hutson,* 810 F.2d at 1033. Where a state provides procedures which govern the taking of property, and those procedures are not fundamentally unfair on their face, and state law provides an adequate remedy to correct alleged errors in the application of these procedures to a plaintiff, no deprivation without due process can occur because the state has provided all the process required by the Constitution. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Lee v. Hutson,* 810 F.2d 1030 (11th Cir.1987).

The court agrees with the parties' contention that decisions of the Step IV Grievance Committee are appealable under O.C.G.A. § 5–4–1 because the committee exercises judicial functions and acts as an infe-

rior adjudicatory body. However, the decision of the committee is not the decision on which this case turns. It is Slovis' decision to withdraw his sponsorship and the hospital's acquiescence in that decision that deprived plaintiff of his employment. That decision was not a judicial act made in the context of a judicial or quasi-judicial proceeding. *See Raughton v. Town of Fort Oglethorpe*, 177 Ga.App. 171, 338 S.E.2d 754 (1985); *Flacker v. Berr Nash Corp.*, 157 Ga.App. 638, 278 S.E.2d 180 (1981). Review under O.C.G.A. § 5–4–1 is limited to matters raised in the record of the hearing below. *Willis v. Jackson*, 148 Ga.App. 432, 251 S.E.2d 341 (1978). Plaintiff was not afforded a hearing, so obviously there was no record to review. The court concludes that the process afforded by the statute was not available to plaintiff.

The court also notes that the facts established at the hearing were *res judicata*. A final decision was rendered in favor of the plaintiff. There is no provision in the grievance procedures for a reversal of the committee's decision, once approved. Nonetheless, the hospital allowed Slovis to effect plaintiff's discharge knowing that Slovis' reasons for doing so had no basis in fact. Because plaintiff had already litigated and prevailed on these issues, there was no reason for him to use the appeal procedure even if it were available. The court finds that plaintiff was deprived of a constitutionally protected interest in continued employment with the hospital without being afforded any procedural due process.

### D. *Substantive Due Process*

In *Bendiburg v. Dempsey* the Eleventh Circuit held that substantive due process prohibits the government from engaging in certain activity regardless of the procedures used to implement that activity. 909 F.2d 463, 468 (1990). The court has defined substantive due process rights as those which the state may not take away, such as those listed in the Bill of Rights and those held to be fundamental. *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 794 (11th Cir.1987) (en banc).[4] To state a claim for the deprivation of a substantive due process right, a plaintiff "must allege that the challenged conduct infringed a constitutionally protected right," not just a state created property interest. *Guntharp v. Cobb County, Ga.*, 723 F.Supp. 771, 778 (N.D.Ga.1989), *aff'd without opinion*, 898 F.2d 159 (11th Cir. 1990).[5]

A public employee's right to substantive due process can be violated when an employer deprives the employee of a state created property interest if the deprivation is "for an improper motive and by means that [are] pretextual, arbitrary and capricious," without regard to whether a hearing was held. *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982). *Barnett*, 707 F.2d at 1577; *Faucher v. Rodziewicz*, 891 F.2d 864 (11th Cir.1990).

Baxter claims that the refusal to reinstate him was pretextual, arbitrary and capricious and has thus alleged more than a simple deprivation of a state created property interest. The court finds that Slovis' attempt to sidestep the employee grievance procedure was arbitrary because his reasons for withdrawing his sponsorship had no basis in fact as the contrary had been established in the Step IV Committee hearing. Slovis was not entitled to ignore facts he knew had been established in an orderly adversarial proceeding. Slovis had no firsthand knowledge of the facts under-

---

4. Procedural due process rights, on the other hand, concern the deprivation of interests created by state law, rather than the Federal Constitution. *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 794 (11th Cir.1987) (en banc). When sufficient procedural protections are afforded, the state may take away these interests, such as an interest in continued public employment. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), 818 F.2d at 794.

5. In *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985), the United States Supreme Court assumed without deciding that a deprivation of a property interest could support a substantive due process claim. *See Guntharp v. Cobb County, Ga.*, for a discussion of that case. In *Guntharp*, this court held that "the deprivation of a state created property right, without more, does not give rise to a substantive due process claim."

lying the charges against plaintiff, and there is no indication that he had any greater access to the evidence than did the committee. What Slovis did in essence was to punish the plaintiff for committing alleged violations when the plaintiff had already been cleared of those very charges. This subversion of plaintiff's constitutional rights is unfair governmental conduct that cannot be tolerated under the Constitution regardless of the procedural protection afforded the plaintiff. Plaintiff is entitled to summary judgment on his substantive due process claims against defendant Slovis.

▮ The hospital has repeatedly stated that the only reason it did not reinstate plaintiff because it could not allow plaintiff to work as an EMT without the sponsorship of Dr. Slovis. In *Morrison v. Washington County, Alabama,* the court refused to accept a hospital's argument it "merely operates as a slavish handmaiden to the whims of physicians on its staff it claims it has no responsibility for." 700 F.2d at 683. A hospital may not escape liability by saying it relied on the judgment of a private physician it employs as an independent contractor. *Id.* at 682. Defendant Grady Hospital's proffered reason is likewise unsatisfactory. The hospital knew that Slovis' refusal to sponsor plaintiff was based on charges which the hospital itself had determined were unsubstantiated. The findings of the Step IV Committee were *res judicata,* yet the hospital allowed Slovis to effect plaintiff's termination on the basis of the same allegations.

As executive director, Pinkston had the authority to order Slovis to allow plaintiff to work under his direction. If he did not have this authority, then Slovis would be the final policymaker for the hospital in this regard. In either case, the hospital treated plaintiff in an unfair and capricious manner by ignoring the results of its own grievance procedures. Plaintiff is entitled to summary judgment on his substantive due process claim against defendants Grady Hospital and Pinkston.

### E. *Eleventh Amendment Immunity*

▮ The Eleventh amendment protects the sovereignty of the states by prohibiting the federal courts from exercising subject matter jurisdiction over suits brought against the state by a citizen of that state when recovery would be paid from state funds. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1509 (11th Cir.1990); *Schopler v. Bliss,* 903 F.2d 1373, 1378 (11th Cir.1990). The amendment applies even when a state is not named as a party of record, such as where state officials are sued in their official capacity. The state is the real party in interest if a recovery would be paid with state funds. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. at 663, 94 S.Ct. at 1355; *Schopler v. Bliss,* 903 F.2d at 1378.

▮ While the Eleventh amendment extends to state agencies and other arms of the state, it does not prohibit lawsuits against municipalities or other discrete political subdivisions that are sufficiently independent from the state. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Brown v. East Cent. Health Dist.,* 752 F.2d 615, 617 (11th Cir.1985). Whether a government entity is protected by eleventh amendment immunity turns on the question of whether the entity is properly classified as an "arm of the state" or as a "municipal corporation or other political subdivision." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471; *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d at 1509. While the ultimate question of whether the state is "the real party in interest" turns on federal law, not state law, a court "must analyze the [entity's] function and character as established by state law in order to determine whether the [entity] is an arm of the state...." *Stewart v. Baldwin County Bd. of Educ.,* 908

F.2d at 1509. *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518, 1520 (11th Cir.1983). When an entity is more like a county or city than it is like an arm of the state, the entity is not entitled to assert any eleventh amendment immunity from suit in federal courts. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 280, 97 S.Ct. at 572; *Travelers Indem. Co. v. School Bd. of Dade County*, 666 F.2d 505 (11th Cir.1982).

◼ The Fulton–DeKalb Hospital Authority was created under the authority of the Hospital Authorities Law, Code Ann. § 88–1801 (now O.C.G.A. § 31–7–70, *et seq.*). In Georgia, hospital authorities created by this Act are local, not state, instrumentalities. *Fulton–DeKalb Hospital Authority v. Gaither*, 241 Ga. 572, 573, 247 S.E.2d 89 (1978). The State Supreme Court has explicitly held that "under the Constitution and under its contract with Fulton and DeKalb Counties the [Fulton–DeKalb] Hospital Authority is an instrumentality of the county and not of the state...." *Id.*, at 573, 247 S.E.2d 89. Hospital authorities are given substantial control over their own affairs including the power to contract to sue and be sued, to purchase and sell property, to issue bonds and incur indebtedness, and to receive the proceeds of bonds issued by the governing body of the political subdivisions with which the authority has contracted to provide health care. The authorizing statute provides that "every hospital authority shall be deemed to exercise public and essential government functions and shall have all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article...." O.C.G.A. § 31–7–75.

While the Hospital Authorities Law provides that the state legislatures may grant funds to hospital authorities, the primary source of operating income is from payment for services rendered by patients and from payments from the authorities' corre-

sponding municipal or county government. Defendants have offered no evidence that any judgment against the Hospital Authority would come primarily from state funds. Because the state is not the real party in interest, the Fulton–DeKalb Hospital Authority is not entitled to immunity under the eleventh amendment. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Stewart v. Baldwin County Bd. of Educ.*, at 1510; *Travelers Indemnity Corp. v. School Bd. of Dade County*, 666 F.2d 505 (11th Cir.1982).[6]

That it may be immune under state sovereign immunity principles does not mean that it is immune under eleventh amendment jurisprudence. In fact, the Authority, here, may be entitled to immunity from suit under Georgia law. *Self v. City of Atlanta*, 259 Ga. 78, 377 S.E.2d 674 (1989). However, a defendant may not "conflate sovereign immunity with regard to a state created tort with Eleventh Amendment immunity for a federal cause of action." *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d at 1510 n. 6; *see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that local school boards were not entitled to eleventh amendment immunity even though entitled to sovereign immunity in the same degree as the state itself from tort suits); *see also Howlett By and Through Howlett v. Rose*, —— U.S. ——, ——, 110 S.Ct. 2430, 2436, 110 L.Ed.2d 332 (1990) ("To the extent that the [state] law of sovereign immunity reflects a substantive disagreement with the extent to which a governmental entity should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law.").

### F. *Sovereign Immunity Under § 1983*

◼ A local government entity can be liable under § 1983 when its official policy or governmental custom is responsible for a deprivation of rights protected by the

---

6. The fact that a local government entity is not a state defendant for purposes of the eleventh amendment does not mean that the entity is not a state actor for purposes of claims asserted

under § 1983. *Edelman v. Jordan*, 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 1358 n. 12, 39 L.Ed.2d 662 (1974).

Constitution. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The entity may not be held liable solely because it employed a person who violated a citizen's constitutional rights. *Id.* Rather, "[r]ecovery from a municipality [or other local government entity] is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

There are two basic ways a violation may be attributed to a local government—by the entity's policy or by its custom. A decision officially adopted by the entity or created by an official of such rank that he is acting on behalf of the entity can constitute a "policy." *Pembaur*, 475 U.S. at 469, 106 S.Ct. at 1292; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1512 (11th Cir.1985) (Johnson, J., concurring in part and dissenting in part), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654. (1986). A policy can be established by a single lower level decision-maker if he is the final policy-maker for the city on that particular subject matter. *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989), discussing *Pembaur*, 475 U.S. at 469, 106 S.Ct. at 1292, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), and *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). For example, in *Pembaur*, the city was liable because a prosecutor was acting as the final decision-maker for the county when he ordered deputy sheriffs to enter the plaintiff's office unlawfully. 475 U.S. at 484–85, 106 S.Ct. at 1300–1301. In *Mandel*, the final policy-making authority with respect to medical decisions at a prison had been delegated to a physician's assistant, and, therefore, the physician's assistant's acts of deliberate indifference to the plaintiff's medical care could be attributed to the county. 888 F.2d at 794. In *Parker v. Williams*, 862 F.2d 1471, 1480 (11th Cir. 1989), a single incident of a hiring of a chief jailer without an adequate background check was attributed to the county because the sheriff was acting as the final holder of county authority over personnel decisions at the jail.

■ In this case, clearly, the actions of defendant Pinkston can be attributed to the Hospital Authority as Pinkston is the executive director. As executive director, it was Pinkston who was given the authority to accept or reject the Step IV Grievance Committee's report regarding the allegations against plaintiff. As the ultimate decision-maker for Grady Memorial Hospital, he had the power to override Slovis' decision and reinstate plaintiff. By failing to do so, he adopted Slovis' decision. *See Pembaur*, 475 U.S. at 469, 106 S.Ct. at 1292. The decision not to reinstate the plaintiff can be fairly attributed to the Hospital Authority.

Defendant Slovis notes that in his capacity as medical advisor, he had no power or authority to terminate or reinstate the plaintiff. Nonetheless, it was his refusal to allow the plaintiff to continue to work under him as Medical Director of the EMS that resulted in the refusal to reinstate plaintiff. The hospital has consistently stated that it could not reinstate plaintiff as long as Slovis refused to allow the plaintiff to work under his direction. If this is true, Slovis and the hospital regarded Slovis as the final decision-maker regarding EMS staff persons working under Slovis' direction and sponsorship. It follows that the Hospital Authority is liable under § 1983 for the actions of both defendants Slovis and defendant Pinkston.

### G. *Qualified Immunity*

■ Defendant Pinkston contends that he is entitled to summary judgment as to his personal liability under the doctrine of qualified immunity. The doctrine generally shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity only applies to protect officials as sued in their individual, rather

than official, capacities. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). The relevant question is "whether a reasonable official could have believed his or her actions were lawful in the light of clearly established law and the information possessed by the official at the time the conduct occurred." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir. 1990); *Anderson v. Creighton,* 483 U.S. 635, 642, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). To successfully assert the defense, a defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts occurred. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983). Plaintiff then has the burden of showing that the defendant's actions violated clearly established law. *Id.; Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988).

 In the present case the court has determined as a matter of law that defendant Pinkston violated plaintiff's procedural and substantive due process rights. A defendant can avail himself of a qualified immunity defense as to his personal liability only if the plaintiff fails to demonstrate that defendant's conduct violated clearly established constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738.[7] It is clearly established that in Georgia a public employee who can only be fired for cause has a constitutionally protected interest in continued employment absent misconduct. *Nolin v. Douglas County,* 903 F.2d 1546, 1553 (11th Cir. 1990); *Cleveland,* 470 U.S. 532, 105 S.Ct. 1487; *Brown,* 881 F.2d at 1026. It is also clear that the allegations underlying Slovis' withdrawal of sponsorship had been decided in plaintiff's favor. Finally, in spite of Pinkston's professed powerlessness[8] in the face of the withdrawal of sponsorship, it is clearly established that a hospital has responsibility and liability for the actions of private physicians it employs.[9] *See* discussion of *Morrison v. Washington County, Alabama,* 700 F.2d at 683 *supra.* Pinkston knew that Slovis' reasons for withdrawing sponsorship were not legitimate. Thus, the undisputed facts in this case show that the defense of qualified immunity is unavailable to defendant Pinkston.

## III. DEFENDANT SLOVIS' MOTION FOR LEAVE TO AMEND

 Once the time period for amending a pleading as of right has expired, Fed.R. Civ.P. 15(a) provides, "A party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Defendant Slovis has moved the court for leave to amend his answer to add the defense that "plaintiff's claims, or some of them asserted against this defendant are barred by the doctrines of sovereign, official and governmental immunity." He also seeks to raise the de-

7. Defendant Slovis did not assert the defense of qualified immunity in his answer. However, he has filed a motion to amend his answer to assert this defense. That motion will be dealt with subsequently. For purposes of this discussion, it is assumed that Slovis had asserted the defense in a timely fashion.

8. Pinkston cites the letter from the Department of Human Resources advising him that under Georgia law an ambulance service can have only one medical advisor, and that a paramedic working in an ambulance service cannot select another person to perform those services. However, the record is devoid of any authority for defendants' contention that an emergency medical technician must work only under the license or sponsorship of a hospital's medical advisor. While the Department of Human Resources concluded that an ambulance service

may have only one provider of direction and training, O.C.G.A. § 31–11–59 allows an EMT who has been approved by the hospital governing authority to render services on order of a physician, or at the direction of any doctor or registered nurse who is present at the time. Pinkston has produced no evidence that plaintiff was not entitled to reinstatement, nor has he claimed or presented any evidence that he investigated the legal basis for Slovis' claim that Slovis was obliged to withdraw his sponsorship.

9. Defendant Pinkston argues that he should not be charged with individual liability for failing to reinstate plaintiff after defendant Slovis withdrew his sponsorship of plaintiff. Pinkston claims that once Slovis refused to serve as plaintiff's medical director/advisor, Pinkston had no choice but to refuse to reinstate plaintiff. The court has already rejected this argument.

fense that he "acted in good faith and in a reasonable and prudent manner" and is, therefore, "entitled to all immunities available to a State, any of its entities, or a State Actor including but not limited to, a qualified good faith immunity."

Defendant Slovis argues that he did not assert these defenses earlier because plaintiff never developed any discovery to support plaintiff's claim that Slovis was "an owner or operator of Grady Hospital" or that Slovis was involved in the decision not to reinstate plaintiff. Slovis also argues that plaintiff "was on notice that his claims may be barred by an immunity available to Dr. Slovis" because Slovis raised the defense of O.C.G.A. § 31–11–8(b) in his original answer. As noted above, O.C.G.A. § 31–11–8(b) has no relevance to this action. Furthermore, the limited immunity it provides is hardly akin to the type of defenses Slovis now seeks to raise. Finally, Slovis argues that the defenses he seeks to add are colorable and rest on cognizable grounds.

Plaintiff responds by noting that Fed.R. Civ.P. 8(c) requires a pleading of affirmative defenses, such as governmental and qualified immunity, in the party's first responsive pleading. He notes that the complaint clearly shows that Slovis was being sued for actions taken under color of state law and was charged in both his official capacity as Medical Director of Grady EMS and in his individual capacity. Plaintiff argues that he would be unduly prejudiced by allowing the amendment because the motion to amend was mailed to plaintiff's counsel only two days before the deadline for filing plaintiff's motion for summary judgment, and was received after the deadline. Plaintiff claims he could not respond to the new defenses without reopening discovery, incurring additional costs, and causing a delay in the proceedings.

The court notes that defendant Slovis did not file the motion for leave to amend for a full eight months after filing his answer to the complaint. The preliminary statement

filed by the parties on June 30, 1989, stated that "[b]ased on a recent ruling of the Georgia Supreme Court, the defendants will file a motion requesting leave of the court to amend their answers and assert defenses of sovereign and official immunity." Defendants made this statement in response to instruction 5(a) of the preliminary statement form prescribed by the Local Rules. Paragraph 5(b) of the same form warns counsel that "[a]mendments to the pleadings submitted LATER THAN 100 DAYS after the complaint is filed will not be accepted for filing unless otherwise permitted by law."[10] Defendant Slovis waited four months after filing the preliminary statement to seek leave to amend. His original motion did not rely on the Georgia case, *Self v. City of Atlanta*, 259 Ga. 78, 377 S.E.2d 674 (1989), referred to in the preliminary statement, though he does cite the case in his reply brief as proof that the defenses of sovereign and governmental immunity were not available to him at the time he filed his answer.

The court notes that *Self v. City of Atlanta* was decided in March of 1989, well within the 100 days given defendant Slovis to amend his answer under the Local Rules. And, as discussed previously, the immunity *Self* recognizes does not shield defendants from a federal civil rights claim, nor does it extend eleventh amendment immunity to the Hospital Authority or its employees. The court expresses no opinion as to its applicability to plaintiff's state law claims against Slovis. Even if *Self* was applicable, it added nothing to the then existing availability of the common law defense of qualified immunity for public officials.

The decision whether to grant leave to amend a pleading lies within the sound discretion of the trial court. *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir.1988); *Stephens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989). Because Rule 15(a) envisions liberal allowance of amendments to pleadings, there must be some substantial reason jus-

---

**10.** Defendants assert that Fed.R.Civ.P. 15(a) is the law otherwise permitting amendment under the circumstances of this case.

tifying denial of the motion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir.1983); *Shipner v. Eastern Airlines, Inc.*, 868 F.2d 401, 407 (1989). A court may consider factors such as "undue delay, ... undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." *Nolin*, at 1550 (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. at 230).

A court acts within its discretion when it denies leave to amend where a movant knew of the facts supporting the amendment when the original pleading was filed, or when the failure to make a timely amendment is without excuse. *National Service Industries v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir.1982); *Ferrell v. Busbee*, 91 F.R.D. 225, 231 (N.D.Ga.1981); *Hoover v. Blue Cross and Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988). Where an apparent lack of diligence exists, the burden appropriately shifts to the moving party to show that the failure "was due to oversight, inadvertence, or excusable neglect [Cits.]." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).

Slovis has offered no excuse for the delay. The complaint was sufficient on its face to alert Slovis to the possible availability of the defenses he now seeks to raise. At the very least, Slovis should have raised the defenses early enough for plaintiff to respond to them in plaintiff's motion for summary judgment. Because a district court must balance the need to "assure a party a fair opportunity to present his claims and defenses" with the need to protect a "busy district court imposed on by the presentation of theories seriatim," *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967), at some point, delay must become procedurally fatal. *Gregory*, at 203. Defendant Slovis' motion for leave to amend his Answer is DENIED.

## IV. REMEDY

Defendant Grady Hospital is ORDERED to implement the decision of the Step IV Grievance Committee and defendant Pink-

ston by reinstating plaintiff within ten (10) days of the entry of this order. Plaintiff is entitled to back pay as provided in the Hospital Personnel Policies and Practices Handbook, with the amount to be determined at trial. Damages for violation of plaintiff's constitutional rights must also be determined at trial.

## V. REMAINING CLAIMS

 The third count in the complaint asserts a state law slander claim against Slovis under O.C.G.A. § 51-5-4. Plaintiff alleges that Slovis told plaintiff, in the presence of third parties, that Slovis would take out a criminal warrant for manslaughter against plaintiff and see that plaintiff's EMT license was revoked if plaintiff persisted in seeking reinstatement. The fourth count asserts a state law claim under O.C.G.A. § 51-9-1 against Slovis for tortious interference with contractual and business relations. No summary judgment motions have been filed as to these claims.

A district court has discretion to dismiss pendent state law claims when it has granted summary judgment on all federal claims. *Ortega v. Schramm*, 922 F.2d 684, 689 (11th Cir.1991); *Rice v. Branigar*, 922 F.2d 788, 792 (11th Cir.1991). In exercising its discretion to dismiss, the court is guided by consideration of judicial economy, convenience, and fairness to the litigants. *Id.* at 689 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The court's discretion is limited only where the statute of limitations would bar refiling of the pendent claims in state court. *Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir.1982). When a federal court dismisses an action without prejudice, and without reaching the merits, Georgia law allows a plaintiff to refile the action in state court within six months, even though the statute of limitations has run subsequent to filing in the federal court. O.C.G.A. § 9-2-61(c); *O'Neal v. Dekalb Co.*, 667 F.Supp. 853 (N.D.Ga.1987), *aff'd* 850 F.2d 653 (11th Cir.1988).

The court believes that dismissal of plaintiff's two state law claims is appropriate.

The only remaining federal issue is the amount of plaintiff's damages. Retaining jurisdiction over the pendent claims would require a trial on issues of Slovis' liability under claims involving legal theories unrelated to the federal claims. *See Wu v. Thomas,* 847 F.2d 1480 (11th Cir.1988) (upholding dismissal of pendent breach of contract claims in Title VII action because the additional legal theories would increase the likelihood of jury confusion). Plaintiff's slander claim involves facts that were unrelated to the disposition of the federal claims. Limiting the evidence at trial to the issue of damages will further judicial economy. Plaintiff will not be prejudiced because he may refile those claims in the state courts.

## VI. CONCLUSION

The undisputed facts before the court show that, as a matter of law, plaintiff had a constitutionally protected interest in continued employment with the hospital, absent misconduct. Acting under color of state law, defendants unconstitutionally deprived plaintiff of this interest in violation of plaintiff's right to procedural and substantive due process. Eleventh amendment immunity does not bar plaintiff's claim. Defendants are not entitled to qualified immunity because they violated plaintiff's clearly established constitutional rights. Defendant Slovis' untimely motion to amend his answer is DENIED. Plaintiff's third and fourth counts, which assert pendent state law claims against defendant Slovis only, are DISMISSED WITHOUT PREJUDICE so that plaintiff may renew these claims in state court.

Plaintiff's motion for summary judgment is GRANTED as to Counts One and Two of the Complaint. The motion for summary judgment by defendants Fulton–Dekalb Hospital Authority and Pinkston is DENIED. The motion for summary judgment by defendant Slovis is DENIED. Defendant Slovis' motion for leave to file an amended answer is DENIED. The parties are DIRECTED to submit a proposed consolidated pretrial order within thirty (30) days of the entry of this order.

SO ORDERED.