**David DUKE, et al.**

v.

**Max CLELAND, et al.**

**No. 1:92–cv–116–RCF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 21, 1992.

Sam Glasgow Dickson, Griffin Dickson & O'Toole, Neil T. Bradley, Moffatt Laughlin McDonald, Kathleen L. Wilde, Mary Ellen Wyckoff, American Civil Liberties Union, Southern Regional Office, Gerald R. Webber, American Civil Liberties Union, Atlanta, Ga., for plaintiffs.

Michael J. Bowers, Atty. Gen., Dennis R. Dunn, Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants.

Oscar N. Persons, Alston & Bird, Atlanta, Ga., for intervenor.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

Plaintiffs came to this court on January 16, 1992 seeking a temporary restraining order and a preliminary injunction. The court set a hearing for January 18, 1992.[1] All defendants were sued in their official capacities.

Following the hearing, and after carefully considering all arguments before the court, the court finds that the movants in this action have not "clearly" carried their burden of persuasion as to each of the four elements required for a preliminary injunction.

## STATEMENT OF THE FACTS

Plaintiffs have filed a *verified* complaint alleging that defendants have denied plaintiffs' rights of free speech and association by denying plaintiff and presidential aspirant, David Duke, access to the Republican primary ballot.

Plaintiffs claim that Mr. Duke meets the objective preliminary criteria generally used to evaluate candidates for inclusion on the ballot, and that he was initially recommended for the ballot by defendant Cleland, in his official capacity, but was voted off by the Republican members of the primary selection committee. *See* O.C.G.A. § 21–2–193. Plaintiffs further argue that the party members who voted to exclude Mr. Duke from the ballot were acting as part of the state apparatus and not in their "private" "party" capacities. Finally, plaintiffs propose that the sole reason for exclusion from the ballot was invidious discrimination based on Mr. Duke's political views and associations, which should be protected under the United States Constitution's first amendment.

The ballots are ready to be sent to the printer without Mr. Duke's name on them. Plaintiffs seek a temporary restraining order and preliminary injunction enjoining defendants from sending the Republican primary ballot to the printer without Mr. Duke's name included.

## INJUNCTIVE RELIEF

As in *Belluso v. Poythress,* 485 F.Supp. 904 (N.D.Ga.1980) (Freeman, J.), the movants seek to preliminarily enjoin the printing of the Georgia Presidential Primary ballots without Mr. Duke's name on it. The standard for granting preliminary injunctive relief requires that plaintiffs prove four separate elements: "(1) a substantial likelihood that [they] will ultimately prevail on the merits; (2) that [they] will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movants outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985) (citation omitted). Furthermore, "[a] preliminary injunction is an extraordinary remedy and should not be granted unless the movant ' "clearly carries the burden of persuasion" ' on all four elements." *Sofarelli v. Pinellas County,* 931 F.2d 718, 724 (11th Cir.1991) (quoting *United States v. Jeffer-*

---

1. At the hearing, Mr. Alec L. Poitevint requested intervention in this matter pursuant to Fed. R.Civ.P. 24, and his request was granted.

*son County,* 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974))).

## I. IRREPARABLE INJURY

■ Plaintiffs attempt to establish that without the intervention of the court, their first amendment rights of engaging in political campaigning and voting in the primary for their candidate will be forever lost.[2] Because the violation of plaintiffs' first amendment rights is their only claim for both the irreparable injury prong and the substantial likelihood prong, the court will discuss them jointly. Unless the plaintiffs show the court that the right exists, they can neither succeed on the irreparable injury element, nor on the likelihood of success element.

The case of *Belluso v. Poythress,* 485 F.Supp. 904 (N.D.Ga.1980) is determinative of the issue of rights. Plaintiffs have a heavy burden to persuade the court of the existence of their first amendment rights, yet they have failed to even distinguish their action from the claims in *Belluso.* While Mr. Belluso challenged a different part of the decision-making process, it is clear that he claimed the exact same first amendment rights that are presented in this action. *Id.* at 906 (access to the primary ballot of the Republican Party of Georgia claimed to be a first amendment right). In *Belluso,* this court distinctly held that, "the right to appear on a general election ballot is constitutionally favored[,] but less than fundamental." *Belluso,* 485 F.Supp. at 911.

The court further indicated that there is no right whatsoever to be included on the primary ballot of a party which does not, itself, extend that right. *Id.* at 912. The political parties are autonomous in their extension of the right to represent their party. "Parties have long been free to strategize and act—at least before the voting begins—in the closed and clouded atmosphere of the smoke-filled room. Parties

exercise rights of free speech and association when they assert this prerogative.... Belluso asserts no group's interest in advancing his candidacy. His claimed need to 'associate' with an unwilling partner, the Republican party in Georgia, is not a first amendment right." *Id.* (citing *Ripon Society v. National Republican Party,* 525 F.2d 567, 584–86 (D.C.Cir.1975) (en banc), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1147 & 1148, 47 L.Ed.2d 341 (1976). Likewise, plaintiffs have failed to show the court that a first amendment right exists which guarantees access to a party's primary ballot (in direct contravention of the party's stated desires).

■ Moreover, plaintiffs' claimed injury has not been affected by the alleged state action. Plaintiffs claim that "[t]he loss of [f]irst [a]mendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunctive Relief [Plaintiffs' Memorandum], at 15. However, plaintiffs have not demonstrated that Mr. Duke and his supporters could not "engage in political campaigning and organizing for the election." *Id.* Plaintiffs have cited no law which prevents them from organizing or campaigning outside the parameters of the Republican Party Primary. Mr. Duke's absence from the primary ballot in no way prevents him from accessing the general ballot. Plaintiffs have not shown the court anything preventing Mr. Duke from running as an independent candidate or as a write-in candidate on the general election ballot. Finally, plaintiffs have failed to show the court any barrier preventing Mr. Duke's Republican supporters from spearheading a campaign at the national convention promoting Mr. Duke as the party's national representative. In essence, plaintiffs did not show this court that Mr. Duke could not become the Republican Party's

---

**2.** Plaintiffs have not argued to this court that they will suffer irreparable harm from violations of their fourteenth amendment rights. Therefore, the court will ignore that aspect of their petition for relief. The movant carries the

burden of establishing each aspect of the preliminary injunction test for each claimed harm. *See Sofarelli v. Pinellas County,* 931 F.2d 718, 724 (11th Cir.1991).

representative on the general election ballot. "[A] candidate who loses in Georgia could still appear on the general election ballot as the party's nominee." Plaintiffs' Memorandum, at 14 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 804, 103 S.Ct. 1564, 1578, 75 L.Ed.2d 547 (1983). Therefore, because this court finds that plaintiffs have not established any injury and hence the irreparability of any injury, the court cannot issue any form of injunctive relief. The plaintiffs cannot receive the injunction they request if they fail to show any one of the four-prong test. By not proving their injury they fail the first two. *Sofarelli v. Pinellas County*, 931 F.2d 718, 724 (11th Cir.1991).

## II. SUBSTANTIAL LIKELIHOOD OF SUCCESS

■ In order to meet their burden under the substantial likelihood of success prong, the plaintiffs must show the court that they would ultimately prevail on the merits of their claim. *Sofarelli v. Pinellas County*, 931 F.2d 718, 723–24 (11th Cir.1991). Therefore, plaintiffs must demonstrate the court that: (1) the claimed constitutional right exists;[3] (2) the alleged action was state action; (3) the alleged state action infringed (or would infringe) on plaintiffs' rights; and (4) there are no counterbalancing rights or interests. The first, third and fourth aspects are dealt with in other sections. The threshold question for the likelihood of success is whether the action complained of is "state action."

This court has recently outlined the various means by which private actors may engage in state action. "[T]he proper inquiry is whether the defendant's conduct is 'fairly attributable' to the state. A person may qualify as a state actor because he receives overt assistance from state officials, acts in concert with other state actors, where his authority was delegated to him by the state, or where the state creates the legal framework governing the conduct." *Baxter v. Fulton–DeKalb Hospital Authority*, 764 F.Supp. 1510, 1517 (N.D.Ga.1991) (Forrester, J.) (citations omitted).

The Georgia legislation governing the process of primary candidate selection is O.C.G.A. § 21–2–193. In pertinent part it states:

> The Secretary of State ... shall prepare and publish a list of names of potential presidential candidates who are generally advocated or recognized in news media throughout the United States as aspirants for that office and who are members of a political party or body which will conduct a presidential preference primary in this state; provided, however, that the Secretary of State shall not include on such list the name of any potential presidential candidate who, if elected to the office of President of the United States, would be ineligible under the Constitution and laws of the United States to serve in such elected office. The Secretary of State shall submit such list of names of potential presidential candidates to the selection committee.... Each person designated by the Secretary of State as a presidential candidate shall appear upon the ballot of the appropriate political party or body unless all committee members of the *same political party or body as the candidate* agree to delete such candidate's name from the ballot....
>
> (b) Any presidential candidate whose name is not selected by the Secretary of State or whose name is deleted by the selection committee may request, in writing, to the chairman of the selection committee ... that his name be placed on the ballot.... the Secretary of State shall convene the committee to consider such requests.... If any member of the selection committee of the *same political party or body as the candidate* requests that such candidate's name be placed on the ballot, the committee shall direct the Secretary of State to place the candidate's name on the ballot.

*Id.* (emphasis added).

Plaintiffs failed to prove that in the process outlined above the actions of the Republican Party members of the selection

---

**3.** As previously discussed, because the plaintiffs failed to prove the existence of a first amendment right, they have already failed to meet this aspect of the test for preliminary injunction.

committee were fairly attributable to the state. In fact, from the court's reading of the appropriate statute, it appears that the state has attempted to leave the party representation process to the political parties. *Id.* ("unless all committee members of *the same political party or body as the candidate* agree"). The state does not assist the party members in their decision;[4] it does not join in the decision-making process with the party members; it does not delegate authority to the parties that the parties do not already have;[5] and it does not mandate guidelines for the decision-making process. *Id. See also Baxter,* 764 F.Supp. at 1517.

A similar situation was recently reviewed by the Eleventh Circuit Court in *Delgado v. Smith,* 861 F.2d 1489 (11th Cir.1988), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989). *Delgado* concerned a balloting procedure in Florida. In *Delgado,* state officials were charged by statute with aiding in the preparation of voter iniatives for the ballot. "For example, the Secretary of State must determine that the petition signatures meet the number and geographic distribution requirements, approve the form of the petition and submit it to the Attorney General of Florida specifying that the petition sponsors have fulfilled certain formal requirements." *Id.* 861 F.2d at 1491. Apparently, the Secretary of State in Florida does not make substantive determinations, but leaves that to the initiates. *Id.* 861 F.2d at 1491–92. Likewise, the Secretary of State of Georgia prepares the ballot for Georgia without making substantive determinations (which are left to the parties). *See* O.C.G.A. § 21–2–193.

The Eleventh Circuit was clear that this type of action was not state action. The court remarked that the State officers assisted all citizens who wished to submit initiative petitions without either "censor[ing] nor endors[ing] the content of any

iniative petitions." *Delgado,* 861 F.2d at 1496. Then, after discussing a line of similar cases, the court wrote:

"No state action link exists between the proponents of the English language petition and the state statutory scheme. The state does not initiate the petition, does not draft the language of the petition, does not address the merits of the proposal and does not participate in any way in the circulation of the petition or in the collection of signatures. Rather, all of this action is taken by private citizens. The state's responsibility is to ensure that the petition meets the requirements of law and will fairly present the proposition that may or may not be placed before the electorate. Such regulation is not sufficient to transpose such private conduct into state action. It is only after a petition is successfully subscribed to that it becomes a matter to be put to a vote—a part of the electoral process."

*Delgado,* 861 F.2d at 1497.

Likewise, the Georgia process is left to private citizens until the ballots are prepared for printing. O.C.G.A. § 21–2–193. The sole difference between the two situations is that O.C.G.A. § 21–2–191 essentially restricts participation in the primaries to the two major parties. Outside that point, the plaintiffs have failed to persuade the court that the party representatives are any different than the voter initiates. Furthermore, the Eleventh Circuit has held that it is not until after the initial process [O.C.G.A. § 21–2–193] that it becomes part of the electoral process. *Delgado,* 861 F.2d at 1497.

### III. OUTWEIGHS POTENTIAL DAMAGE TO DEFENDANTS FROM INJUNCTION

■ Plaintiffs' arguments for the last two prongs of the preliminary injunction

---

**4.** The ballot determination is a two-step process. The initial process whereby the Secretary of State submits the names to the committee is not challenged in this action.

**5.** This aspect of state action is discussed below. However, the court reads O.C.G.A. § 21–2–191 (only those parties which have cast greater than twenty percent of the votes in the last presidential election may participate in the presi-

dential preference primary) and O.C.G.A. § 21–2–195 (parties are free to set out the rules by which delegates are bound) alongside O.C.G.A. § 21–2–193 (ballot decision-making) as a distinct attempt at preserving party autonomy in the nomination process. If the State could not ask the party to choose the ballot participants, the whole process would surely be state action.

test are that the injunction would not harm defendants and would promote the public interest. They claim, without authority, that the injunction "can hardly constitute a cognizable injury." Plaintiffs' Memorandum, at 17. The court disagrees. Not only is there evidence of an injury to defendants which outweighs any potential harm to plaintiffs, but also plaintiffs have failed (once again) to carry their burden in the process. A conclusory statement with no cited authority is hardly an argument worthy of a preliminary injunction.

The other parties to this action have noted a distinct harm to defendants and to the intervening party—the state's interference with the right of association of the Republican Party of Georgia. Perhaps the most compelling of the arguments is the forced association of an unwanted presidential candidate on a particular party. The right of association is emphasized in *Eu v. San Francisco City Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). The Court clearly indicated that the right to choose party representation should not be interfered with by the state.

> Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to " 'identify the people who constitute the association,' " *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 214, 107 S.Ct. [544] 548 [93 L.Ed.2d 514] (quoting *Kusper v. Pontikes,* 414 U.S. 51, 57, 94 S.Ct. [303] 307 [38 L.Ed.2d 260]) and to select a "standard bearer who best represents the party's ideologies and preferences." *Ripon Society, Inc. v. National Republican Party,* 525 F.2d 567, 601 (D.C.Cir.1975) (Tamm, J., concurring in result), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

*Id.* at 224, 109 S.Ct. at 1021.[6]

The court finds that defendants' uncontested damages are of a nature that they not only pertain to defendants, but also to the political process itself. Therefore, there is a natural overlap between the above discussion and any discussion of the final prong of the preliminary injunction test.

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs' request for a temporary restraining order and a preliminary injunction to prevent defendants and their agents from excluding plaintiff David Duke from the 1992 Georgia Presidential Preference Primary Ballot is DENIED.

SO ORDERED.

---

**6.** The Court also wrote: "Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Id.* at 224, 109 S.Ct. at 1024.