David DUKE, Patrick J. Mahoney, Larry Agran, Lyndon H. Larouche, Jr., Guillermo Sanchez, Tasharay S. Otway–Smithers, David Baldwin, Edward J. Rosenfeld, Eugene Cottrell, Claire Urdl, William Edward Bonnell and Susan Brooks Thomas, Plaintiffs,

v.

Jim SMITH, Secretary of State of the State of Florida, T.K. Wetherell, Speaker of the Florida House of Representatives, Gwen Margolis, President of the Florida Senate, James M. Lombard, Minority Leader of the Florida House of Representatives, Ander Crenshaw, Minority Leader of the Florida Senate, Simon Ferro, Chairman of the Florida Democratic Party, and Van Poole, Chairman of the Florida Republican Party, in their capacities as members of the Florida Presidential Selection Committee, Defendants.

No. 92–0134–CIV.

United States District Court, S.D. Florida.

Jan. 30, 1992.

Bruce Rogow, Beverly Pohl, Fort Lauderdale, Fla., Nina Vanik, Miami, Fla., Richard B. Kay, Tequesta, Fla., H. Collins Forman, Fort Lauderdale, Fla., for plaintiffs.

Mark Levine, Fort Lauderdale, Fla., George Waas, Tallahassee, Fla., for defendants.

E. Thom Rumberger, Daniel J. Gerber, of Rumberger, Kirk & Caldwell, P.A., Orlando, Fla., for Van Poole, Crenshaw and Lombard, defendants.

## MEMORANDUM OPINION AND FINAL JUDGMENT

MORENO, District Judge.

THIS suit involved as plaintiffs a number of individuals seeking placement on the presidential preference primary ballot of the Democratic and Republican parties in the State of Florida. Another group of plaintiffs includes individuals who are political party member registered voters who would like to vote for one of the other candidate plaintiffs.

### I. BACKGROUND

Plaintiffs LaRouche, Agran and Mahoney are seeking placement on the Democratic party presidential preference primary ballot. Duke seeks placement on the Republican party ballot. The Court also permitted Eugene McCarthy to intervene as a plaintiff seeking access to the Democratic ballot. Plaintiffs ask this Court to enter an injunction ordering that their names be placed on the primary ballot scheduled for March 10, 1992 and to declare the procedure set forth in Florida Statute § 103.101 as unconstitutionally void for vagueness since it provides no rules governing the decisions of the political parties and it allows for such parties and their officials to make their decisions in an arbitrary and capricious manner. Specifically, the plaintiffs allege that the Presidential Selection Committee composed of the chairman of the Democratic and Republican parties, as well as the Senate President, Speaker of the House (presumably the majority party leaders), and the minority party leaders in each legislative house, excluded plaintiffs from their parties' ballots because of the candidates' political beliefs.

## II.  PROCEDURAL HISTORY

The complaint was filed on Friday, January 17, 1992.  The Plaintiffs seek injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 alleging violations of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Subsequently, the Court held a status conference and the attorneys for all parties requested from the Court an expedited trial date.

Since the presidential preference primary ballots must be printed by February 4, 1992,[1] the Court enters this Order on an emergency basis.

The plaintiffs and defendants consented, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, to a consolidation of the trial on the merits with the preliminary injunction evidentiary hearing.  The Court held a trial on Tuesday, January 28, 1992.

### III.  TRIAL

#### A.  Witness Testimony

Van Poole, chairman of the Florida Republican party and member of the Presidential Candidate Selection Committee, gave live testimony in this matter.  Poole, Ander Crenshaw, minority leader of the Florida Senate and James Lombard, minority leader of the Florida House of Representatives, comprise the Republican party membership on the selection committee.  Poole represented that Secretary of State Jim Smith's role, consistent with the statute, is merely as a nonvoting chairman who does not participate in the decisions of the Republicans or Democrats to add or delete names from the list of candidates.  Democrat members of the Committee select Democrat candidates for the ballot, and Republican members select Republican candidates.

Poole testified that the three Republican members of the selection committee agreed to delete David Duke's name from the list of candidates submitted because his political views were inconsistent with traditional Republican values.  Poole specifically cited Duke's former activities with the Ku Klux Klan, Nazis and his association with the National Association for the Advancement of White People.  The Republican members of the committee chose President George Bush and Patrick Buchanan to appear as Republican candidates on the presidential preference primary ballot.

Poole pointed out that David Duke attempted to gain access to the presidential preference primary ballot in 1988 as a Democrat.  When Duke was denied access, he ran on the Populist party ballot and received 249 out of a possible 4 million votes.  Given this lack of support and his absence of beliefs in Republican values, the Republican Committee members decided not to include Duke's name on the Republican ballot.

Poole acknowledged that there are no criteria set forth in the statute governing procedures for selecting candidates or reconsidering denial of access, or delineating Republican values.  Questioned about a statement made by Secretary of State Smith concerning ambiguities in the statute, Poole explained that the Secretary was uncertain as to how to proceed in the absence of any member at selection committee meetings.

Poole testified that the State of Florida did not assist in denying Duke access since the Republican party has its own by-laws and internal operating guidelines.  Poole stated that a private party has the right to associate with whomever it desires.

Poole asserted that the Selection Committee meetings did not have to occur in the Governor's conference room in the state capitol.  The statute only mandates that the meetings take place on a specific day and could be located at any place including party headquarters.  Poole stipulated that the state participates in the preference primary elections by facilitating elections with machines, voting cards and employees.  Poole admitted that prospec-

---

**1.**  The Florida Division of Elections must act pursuant to a federal consent decree and federal act that require absentee ballots to be mailed 35 days prior to the March 10, 1992 primary.

tive candidates are not required to submit a candidacy filing fee.

Simon Ferro, chairman of the Florida Democratic Party and member of the Presidential Candidate Selection Committee, also testified at the trial. Ferro testified that the three Democrat members of the selection committee excluded Larry Agran, Lyndon Larouche, Patrick Mahoney and Eugene McCarthy from the Democrat preference primary ballot because these individuals did not meet two established criteria.

The two criteria used by the Democrat members were (1) whether the prospective candidate had qualified for federal matching funds and (2) whether the prospective candidate is generally recognized on a national level. These criteria, although not written, were developed by a straw ballot committee in accordance with the views of the Democratic National Committee. No candidate was deleted from the ballot on account of political beliefs. Ferro admitted that there are no standards in the statute which authorize or prescribe the unwritten, unpublished criteria used by the Democrat members to evaluate a prospective candidate's access to the ballot.

Ferro expressed his belief that the Selection Committee members were acting in their capacities as political party leaders and not as elected state officials. Ferro testified that the Florida Democratic party is a private organization operating under its own rules and procedures independent from interference by the state. The state does not restrict the right of the committee members of each political party to choose their own candidates to be placed on the preference primary ballot. Ferro maintained that the state is completely uninvolved with the selection of candidates. The Democrat members of the committee do not participate in choosing Republicans, and the Republicans are not involved in selecting Democrats.

After Ferro finished testifying, David Duke took the stand in his own behalf. Duke reiterated that he is a nationally declared Republican candidate for President of the United States who formerly held state representative office as a Republican in Louisiana. Duke stated that he was previously a conservative Democrat, but he became disenchanted with Democratic ideals and has been a Republican since 1988. Duke believes that he has gained access to the presidential preference primary ballots in at least ten states.

### B. Exhibits and Affidavits

Defendant Van Poole's Exhibits, No. 1 and No. 2, are respectively the minutes of the January 7 and January 16, 1992 meetings of the Presidential Candidate Selection Committee. The minutes from the January 7 meeting show that the Republican members of the committee did not wish to add any candidate to their list of George Bush and Pat Buchanan. The Democrats did not desire to add to their list of Jerry Brown, Bill Clinton, Tom Harkin, Bob Kerrey, Paul Tsongas and Doug Wilder. The reference to ambiguities in the statute clearly revolves around whether a meeting of the Selection Committee could occur in the absence of any member.

The January 16 minutes show that in the reconsideration hearing, the Democrats did not wish to add to the list of Democrats and the Republicans did not desire to add to their list.

Defendant Simon Ferro's Exhibit No. 1 is a questionnaire sent by Ferro to the Democratic executive committee seeking input from Democrats in compiling the list of candidates to be submitted to the Secretary of State. The questionnaire shows how many votes a prospective candidate received. The top six vote getters were placed on the list presented to the Secretary of State and transmitted to the Presidential Candidate Selection Committee.

Plaintiff David Duke's Composite Exhibit No. 1 indicates that Duke has filed his declaration of candidacy for the Presidency of the United States with the Federal Elections Commission.

Other exhibits admitted, without objection, included affidavits submitted by Gwen Margolis, President of the Florida Senate, and T.K. Wetherell, Speaker of the Florida House of Representatives, indicating that

their participation in the Presidential Candidate Selection Committee was as a result of the Democratic Party Leadership roles and not in their capacities legislators.

### C. Statute

Section 103.101 of the Florida Statutes provides in relevant part:

(2) There shall be a Presidential Candidate Selection Committee composed of the Secretary of State, who shall be a nonvoting chairman; the Speaker of the House of Representatives; the President of the Senate; the minority leader of each house of the legislature; and the chairman of each political party required to have a presidential preference primary under this section.

(a) By December 31 of the year preceding the Florida presidential preference primary, each political party shall submit to the Secretary of State a list of its presidential candidates to be placed on the presidential preference primary ballot or candidates entitled to have delegates appear on the presidential preference primary ballot. The Secretary of State shall prepare and publish a list of the names of the presidential candidates submitted. The Secretary of State shall submit such list of names of presidential candidates to the selection committee on the first Tuesday after the first Monday in January each year a presidential preference primary election is held. Each person designated as a presidential candidate shall have his name appear, or have his delegates' names appear, on the presidential preference primary ballot unless all committee members of the same political party as the candidate agree to delete such candidate's name from the ballot. The selection committee shall meet in Tallahassee on the first Tuesday after the first Monday in January each year a presidential preference primary is held. The selection committee shall publicly announce and submit to the Department of State no later than 5 P.M. on the following day the names of presidential candidates who shall have their names appear, or who are entitled to have their delegates' names appear, on the presidential preference primary ballot ...

(b) Any presidential candidate whose name does not appear on the list submitted to the Secretary of State may request that the selection committee place his name on the ballot. Such request shall be made in writing to the Secretary of State no later than the second Tuesday after the first Monday in January.

(c) If a presidential candidate makes a request that the selection committee reconsider placing the candidate's name on the ballot, the selection committee will reconvene no later than the second Thursday after the first Monday in January to reconsider placing the candidate's name on the ballot. The Department of State shall immediately notify such candidate of the selection committee's decision.

Fla.Stat. § 103.101(2)(a), (b), (c).

### LEGAL ANALYSIS

The state action issue is the threshold question in this case. If the actions of the Presidential Candidate Selection Committee created by Florida Statute § 103.101 were actions taken "under color of state law," then this Court must address the constitutional validity of the statute. If the actions of the Committee were not taken "under color of state law," then Plaintiffs have failed to establish a cognizable claim under 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202, challenging the constitutionality of Florida Statute § 103.101.

Courts have recently outlined the various means by which private actors may engage in state action. *See Baxter v. Fulton–Dekalb Hospital Authority*, 764 F.Supp. 1510 (N.D.Ga.1991). "The proper inquiry is whether the defendant's conduct is 'fairly attributable' to the state. A person may qualify as a state actor because he receives overt assistance from state officials, acts in concert with other state actors, where his authority was delegated to him by the state, or where the state creates the legal framework governing the conduct." *Bax-*

*ter v. Fulton–Dekalb Hospital Authority,* 764 F.Supp. 1510, 1517 (N.D.Ga.1991).

A long line of precedent stands for the proposition that political parties have the right to determine and enforce the qualifications of members and candidates through self-governance. In *Ripon Society v. National Republican Party,* 525 F.2d 567 (D.C.Cir.1975) the Court of Appeals stated "that a party's choice, as among various ways of governing itself, of the one which seems best calculated to strengthen the party and advance its interest, deserves the protection of the Constitution ... The express Constitutional rights of speech and assembly are of slight value indeed if they do not carry with them a concomitant right of political association." *Id.* at 585.

In essence, political parties have no fewer rights than other private organizations. The Constitution and Bill of Rights serves to protect these organizations from unwarranted government intrusion and interference. The elected leadership of the Republican and Democratic parties have exercised their First Amendment right not to associate with the Plaintiffs seeking to be placed on the Florida Primary ballot. "A State, or a court, may not constitutionally substitute its own judgment for that of the Party.... And as is true of all expressions of First Amendment freedoms, the court may not interfere on the ground that they view a particular expression as unwise or irrational." *Democratic Party of the United States v. Wisconsin,* 450 U.S. 107, 123–24, 101 S.Ct. 1010, 1020, 67 L.Ed.2d 82 (1981).

In *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986), the United States Supreme Court held a statute unconstitutional on First Amendment grounds because it restricted political parties rights of association. The Republican Party of Connecticut wanted to allow voters to participate in its primaries even though they had only recently registered as Republicans. The state prohibited participation of such registrants on the grounds that the state wanted to ensure competent administration of the primary, prevent voter confusion, and protect the integrity of the two-party

system. The Supreme Court decided that such interests were greatly outweighed by the political party's right to associate with those of its own choosing. The court stated that "The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution." *Id.* at 224, 107 S.Ct. at 554.

In *Wymbs v. Republican State Committee of Florida,* 719 F.2d 1072 (11th Cir. 1983), *cert. den.* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984), the Eleventh Circuit Court of Appeals upheld a political party's right to choose the method by which it would select delegates to the party's national convention. In *Wymbs* the Court followed the Supreme Court's admonition that courts and the state should not interfere in the internal operations of political parties. *Id.* at 1084. Despite plaintiff's allegations that the party's delegate selection process violated the right to equal representation and equal participation, the Court sustained the political party's right to govern itself free from government intrusion.

### A. Plaintiffs Have Failed to Prove State Action

■ In order to prove a right to relief for the alleged constitutional violations, the Plaintiffs must prove state action. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). It is clear upon a review of Fla.Stat. §§ 103.091, 103.101, *Kay, v. Smith,* TCA 88–40009–MMP (consolidated with Nos. 88–40015 and 40016) (N.D.Fla. 1988) *Aff'd without opinion,* 897 F.2d 536 (11th Cir.1990) (unpublished), and the evidence presented at the trial that the Secretary of State's role is of a ministerial nature and that the choice of presidential candidates is purely a political and party function.

The fact that the Florida Statutes mandate the existence of a Presidential Candidate Selection Committee, currently comprised of three Republican leaders, three Democratic leaders and the Secretary of State, does not transform the actual operation of that Committee from internal party

proceedings to state action. The evidence before this Court suggests that, at best, the meeting of the Presidential Candidate Selection Committee provides a definite meeting time for decision for political parties to transmit the names of their presidential preference primary candidates to the Secretary of State.

With specific regard to the Secretary of State, that officer is chosen to serve on the selection committee as the chief election officer of the state, § 97.012, Fla.Stat., although that officer does not conduct elections. The Secretary of State's role is that of a facilitator who does not and cannot take any action. It should also be pointed out that under Fla.Stat. § 103.101(2), while the Secretary of State is designated as chairman of the Presidential Candidate Selection Committee, he is a non-voting chairman, which is further evidence of the absence of state action.

By operation, the real decision to include or exclude a candidate on the presidential preference primary ballot is made by the political party's leadership. As previously discussed at length, the internal rules and policies of a political party which lead to the decision to disallow a candidate to appear on the presidential primary ballot are clearly protected by the Constitution. Allowing Plaintiffs any opportunity to interfere with the internal functions and decisions of the political parties would be a violation of the parties own rights of association.

### B. Plaintiffs' Constitutional Rights Have Not Been Violated

■■■ Plaintiffs' reliance on numerous cases involving issues of ballot access in general elections is misplaced. Different interests are implicated in the context of a primary election, and those differing interests require a different result when the issue is access to ballot in a primary election.

Numerous courts have recognized the fundamental differences between primary elections, in which the parties select their candidates, and general elections, in which the people choose their representatives. *See e.g., Belluso v. Poythress,* 485 F.Supp. 904 (N.D.Ga.1980); *Cross v. Fong Eu,* 430 F.Supp. 1036 (N.D.Cal.1977); *Nader v. Schaffer,* 417 F.Supp. 837 (D.Conn.1976), *aff'd mem.,* 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976).

While the voters' right to vote may be paramount in the context of a general election, denying an individual the opportunity to vote for a candidate in a primary election does not infringe on the voter's right of freedom of association. *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). However, the political parties' own rights of association would be infringed upon by Plaintiffs' intended interference into the parties candidate selection processes. *See Nader, supra,* at 846–47.

There is no fundamental right to run for public office. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *see also, e.g., Adams v. Askew,* 511 F.2d 700 (5th Cir.1975). Nor is there any constitutional right to primary participation. *Consumer Party v. Davis,* 633 F.Supp. 877, 888 (E.D.Pa.1986); *see also, American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974).

Furthermore, there are no allegations which suggest that Plaintiff Duke or any co-plaintiff is a member of a suspect class protected by the Equal Protection Clause. *See San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973). In the absence of the implication of a fundamental right or of a suspect classification, which is clearly not involved here, an action is measured by the criterion of mere rationality. *See, e.g., Belluso v. Poythress,* 485 F.Supp. 904, 910 (N.D.Ga.1980); *Joseph v. City of Birmingham,* 510 F.Supp. 1319, 1328 (E.D.Mich. 1981). Political parties' interests in limiting the size of the ballot to minimize voter confusion and to preserve the integrity of the process have passed constitutional muster. *Consumer Party v. Davis,* 633 F.Supp. at 887; *American Party of Texas v. White,* 415 U.S. at 782 n. 14, 94 S.Ct. at 1307 n. 14. Therefore, Plaintiffs' rights to equal protection of the law have not been violated by Defendants' actions.

Furthermore, Plaintiffs' First Amendment rights are not violated as Plaintiffs have cited no law which prevents them from organizing or campaigning outside the parameters of the Republican or Democratic Party Primary and any candidate's absence from the primary ballot in no way prevents access to the general ballot. *Duke v. Cleland,* 783 F.Supp. 600, 602 *aff'd* 954 F.2d 1526 (11th Cir.1992).

The state of Florida provides an independent candidacy route as an "alternative to being nominated in one of the direct party primaries." *Storer v. Brown,* 415 U.S. 724, 733, 94 S.Ct. 1274, 1280, 39 L.Ed.2d 714 (1974). Plaintiffs simply can register as "independent candidates for office," pursuant to § 99.0955, Florida Statutes. Alternatively, Plaintiffs can register as "minor party candidates," pursuant to § 99.-096. Under these sections, candidates for office may have their names printed on the general ballot by complying with certain minimum standards, the most substantial of which is to obtain the signatures of three percent of the registered electors in the state.

These sections provide a constitutionally permissible alternative to the Plaintiffs' participation in the Democratic or Republican presidential preference primary. *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Given these reasonable avenues to appear on the general ballot,[2] Plaintiffs can allege no violation of constitutional rights due to any exclusion from the Democratic or Republican presidential reference primary ballot. A person simply does not have a constitutionally protected right to run as the representative of his current chosen political party. *Belluso v. Poythress,* 485 F.Supp. 904, 912 (N.D.Ga.1980).

To force a political party to accept as its standard bearer an individual whose views are not shared by the same party not only violates the party's constitutional freedom of association but would run contrary to the very reason for the existence of a politi-

cal party, i.e., to advance, without state interference, whatever political views it desires, and to choose whomever it considers to be a viable leader of that party.

Based on the foregoing, it is

ADJUDGED that Final Judgment is ENTERED in Favor of Defendants.

DONE AND ORDERED.

---

**2.** Plaintiff Duke is well aware of these alternative avenues. After being excluded from the Democratic primary ballot in 1988, Duke availed himself of a reasonable alternative avenue by running as a member of the Populist party.